The **LODGE & SHIPLEY COMPANY**,
Plaintiff-Appellee,

v.

The **UNITED STATES** of America,
Defendant-Appellant.

The **LODGE & SHIPLEY COMPANY**,
Plaintiff-Appellant,

v.

The **UNITED STATES** of America,
Defendant-Appellee.

Nos. 14430, 14431.

United States Court of Appeals
Sixth Circuit.

July 27, 1962.

644

Melva M. Graney, Department of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Karl Schmeidler, Attorneys, Department of Justice, Washington, D. C., Hugh K. Martin, U. S. Atty., Richard H. Pennington, Asst. U. S. Atty., Cincinnati, Ohio, on brief, for United States.

James J. Ryan, Cincinnati, Ohio, George E. Fee and Doole, O'Donnell, Cash, Fee & Hahn, Cincinnati, Ohio, on brief, for Lodge & Shipley Co.

Before MARTIN,* MAGRUDER and CECIL, Circuit Judges.

MAGRUDER, Circuit Judge.

These two cases involve the effort by The Lodge & Shipley Company to obtain a tax refund from the United States. In No. 14,430, the district court decided that under the provisions of § 381(c) (16) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 381(c) (16), the plaintiff was entitled to deduct the sum of $80,147.23 "in computing its taxable income for the year 1954 and to recover from defendant a refund of the taxes overpaid in that year by reason of not having been allowed such deduction, together with interest as provided by law." The United States has duly appealed from this judgment. In No. 14,431, the district court decided that the United States did not owe the taxpayer the somewhat greater amount, under § 3806 of the Internal Revenue Act of 1939, 26 U.S.C.A. § 3806, founded on the theory of overpayments by the taxpayer in 1951, 1952, and 1953. The taxpayer appeals from this portion of the judgment. D.C., 186 F.Supp. 698.

We think that the government was right in both instances, which results in our reversal of the judgment in No. 14,-430 and our affirmance of the judgment in No. 14,431.

The facts in these cases are for the most part stipulated. They are not in controversy. In March, 1951, the Columbia Machinery and Engineering Corporation entered into a contract with the United States for the production of tank parts. The United States agreed to pay a stipulated price for the parts manufactured thereunder. The contract also contained renegotiation provisions.

Pursuant to this contract, Columbia delivered parts in the amounts of $108,-931.52, $244,060.99, and $23,918.82, in the years 1951, 1952, and 1953, respectively. These amounts were properly accrued as income by Columbia, an accrual basis taxpayer, for its fiscal years ending January 31, 1952, and January 31, 1953, and its final fiscal period ending December 22, 1953, on which date Columbia was merged into The Lodge & Shipley Company. All deliveries under the contract were made by Columbia prior to the merger. However, during each of these

* Judge MARTIN took no part in the decision of these cases.

tax years Columbia had reported net losses on its federal tax returns as follows:

| Fiscal Year Ending | Net Loss |
|---|---|
| January 31, 1952 | $ 66,410.52 |
| January 31, 1953 | 15,278.84 |
| December 22, 1953 | 140,623.40 |

Consequently, no federal income or excess profits taxes were paid by Columbia on the parts contract income accrued by it during those years. In March, 1953, the government, pursuant to the renegotiation provisions of the parts contract with Columbia, made a redetermination of the prices set forth therein. Columbia appealed this redetermination to the Armed Services Board of Contract Appeals.

Thus on December 22, 1953, when Columbia was absorbed into The Lodge & Shipley Company by an Ohio statutory merger, Columbia had fulfilled its contract calling for the delivery of tank parts, but the liability that might ensue from the pending renegotiation had not been ascertained.

The chairman of the board of The Lodge & Shipley Company testified that there had been considerable discussion as to what form the merger should take, and that it was decided to forgo any monetary tax advantage which might be realized by merging The Lodge & Shipley Company into Columbia, a loss company, in favor of the business advantage it was believed would follow from the continuation of The Lodge & Shipley Company. The merger agreement provided that the surviving corporation would succeed to all the rights, privileges, powers and franchises and become subject to all the restrictions, liabilities and duties of both corporations. Financial statements supplied by Columbia during the course of the negotiations were not diminished by the contingent liability arising out of the renegotiation of the tank parts contract, though the fact that this matter was pending was noted on the statements.

It was agreed that The Lodge & Shipley Company would issue 3,500,000 shares of common stock, 400,000 of which were to be distributed to the shareholders of Columbia as the sole and entire consideration for its assets. The district court expressly found, and it is not here contested, that the amount of stock distributed to the Columbia shareholders did not reflect the contingent liability above mentioned. Subsequent to the merger The Lodge & Shipley Company became substituted for Columbia as the party appellant before the Board of Contract Appeals in the contract renegotiation dispute.

The government entered into an agreement with The Lodge & Shipley Company known as the "Tripartite Agreement" on May 17, 1954. This document declared it to be in the best interest of the government to recognize the merger and to accept The Lodge & Shipley Company as the successor of Columbia. It was therein agreed that The Lodge & Shipley Company assumed all the duties and liabilities of Columbia with the same force and effect as if The Lodge & Shipley Company had been named as the contractor in the tank parts contract. It was further provided that any and all settlements and adjustments could be made between The Lodge & Shipley Company and the government without the need of any accountability to Columbia.

On December 6, 1954, the Armed Services Board of Contract Appeals issued its decision establishing the contract price on the tank parts contract at a total of $324,736.64, and ordering The Lodge & Shipley Company to pay to the United States the sum of $80,147.23.

Since not all the accruals under the contract had yet been paid by the government, such unpaid amounts were credited against the total payment due. The balance of $26,097.30 was paid by The Lodge & Shipley Company pursuant to a so-called supplemental agreement negotiated between the government and The Lodge & Shipley Company. As stated above, in effect The Lodge & Shipley Company has paid to the United States the sum of $80,-147.23, which was the amount of the reduction in the contract price.

■ We point out that if an accrual basis taxpayer has properly accrued its income for a past year, then on the annual basis of accounting (see Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383 (1931); American Automobile Ass'n v. United States, 367 U.S. 687, at 702, 81 S.Ct. 1727, 6 L.Ed. 2d 1109 (1961)), it is purely a matter of grace whether the United States should allow a refund based upon what occurs in a later year. If there had been no merger here, and if Columbia had reported and paid excess profits taxes for the years 1951, 1952, and 1953, the amount which the Board of Contract Appeals decreed The Lodge & Shipley Company should pay the United States would have reduced the excess profits tax paid for those years correspondingly, and Columbia would have received a refund, pursuant to § 3806 of the Revenue Act of 1939.

Unfortunately for this taxpayer, that is not what happened in the present case. As an accrual basis taxpayer, The Lodge & Shipley Company deducted $80,147.23 from its reportable income for the year 1954. This deduction was disallowed by the Commissioner, and taxpayer was assessed an additional tax of $41,676.56.

■ It seems clear that under the applicable statute such action by the Commissioner was correct. The judgment in No. 14,430 must be reversed. Section 381 (c) (16) of the Internal Revenue Code of 1954 specifically conditions the right of refund to a transferee corporation to the situation where the transferor corporation would likewise have been entitled to it. But Columbia would not have been entitled to a deduction in 1954, or in any other year. Section 1481(d) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1481(d) deals with the mitigation of the tax effects of renegotiation of government contracts, and provides that, when a renegotiation relates to profits in taxable years subject to the 1939 Code, "the adjustments in respect of such renegotiation shall be made under section 3806 of such code." Section 3806 of the 1939 Code must be relied upon in the instant case to determine the tax effects of the renegotiation. This section would not have allowed Columbia to take a deduction; therefore, The Lodge & Shipley Company, the surviving corporation in the merger, is also not entitled to take a deduction. Under § 3806, the adjustment which is authorized is to be made, not by means of deduction in the year a refund is required, but rather by means of a retroactive computation of income, and a summary procedure is established whereby an offsetting tax is used to mitigate the effects of the renegotiation. To hold that Columbia could have taken a deduction in 1954 would be contrary to the specific prohibition in § 3806(a) (3).

■ Nor is the foregoing altered by the fact that the government negotiated the "Tripartite Agreement" with The Lodge & Shipley Company. The taxpayer is trying to transform the tax credit permitted by § 3806 into a deduction. Because Columbia sustained and reported net losses for the years 1951, 1952, and 1953, and paid no taxes on the contract accruals for those years, under the clear language of § 3806 it would not have been entitled to any tax credit upon the repayment of the excessive profits. Accordingly, The Lodge & Shipley Company, as the successor to Columbia, also is not entitled to any tax credit under that section, and the judgment in case No. 14,431 must be affirmed.

A judgment will be entered reversing the decision in No. 14,430 and remanding the case to the District Court for further proceedings not inconsistent with this opinion. A judgment will be entered affirming the decision of the District Court in No. 14,431.